Filed 1/7/25  P. v. Higgenbotham CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>          v.<br><br>ORIN OVEAL HIGGENBOTHAM,<br><br>    Defendant and Appellant. | G063883<br><br>(Super. Ct. No. INF2201521)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Riverside County, Kristi E. Hester, Judge.  Reversed in part, affirmed in part, and remanded with instructions.

Susan S. Bauguess, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Senior Assistant Attorney General,

Kristen A. Ramirez and Steve Oetting, Deputy Attorneys General, for Plaintiff and Respondent.

*　　　*　　　*

Orin Oveal Higgenbotham is a sex registrant who failed to register from February 23, 2022, through July 5, 2022. The Riverside County District Attorney's Office charged Higgenbotham with two felony counts of willfully and knowingly failing to register. At trial, Higgenbotham conceded he failed to register but argued he misunderstood the registration requirements for traveling transients, thus his failure to register was not willful or knowing. The jury convicted him on both counts, and the trial court sentenced him to two years in state prison on both counts, with count 2 stayed pursuant to Penal Code § 654.[1]

Higgenbotham raises four issues on appeal: (1) there was insufficient evidence to support the conviction on count 1; (2) the trial court erred in denying Higgenbotham's pinpoint jury instruction; (3) the trial court erred in denying Higgenbotham's request for a mistake of law jury instruction; and (4) there was an error in the minute order and abstract of judgment.

We agree there was insufficient evidence on count 1 and there was an error in the minute order and abstract of judgment. The jury instruction contentions lack merit. We reverse the judgment on count 1, affirm the judgment on count 2, and remand with instructions to correct the minute order and abstract of judgment.

---

[1] All further statutory references are to the Penal Code.

FACTS

I.

THE CHARGED OFFENSES

Higgenbotham is a transient sex offender subject to mandatory registration under the Sex Offender Registration Act. (§ 290 et seq.) Transient registrants like Higgenbotham must register in whichever jurisdiction they are physically present: (1) within five working days of their birthday; (2) every 30 days; and (3) within five working days of coming into or residing in any city or county. (§§ 290, subd. (b), 290.011, subd. (c).) If the transient registrant leaves the new city or county by the fourth working day, this specific registration requirement would not apply to them. The other requirements nevertheless apply.

For 15 years, Higgenbotham successfully complied with the registration requirements, registering over 70 times. Higgenbotham stopped registering after February 23, 2022, and began traveling around California and Arizona. On July 5, 2022, a police officer arrested Higgenbotham in Desert Hot Springs, California, after concluding he was out of compliance with his sex offender registration requirements.

The Riverside County District Attorney charged Higgenbotham with two felony counts for failing to register: (1) within five working days of residing in Desert Hot Springs, California (§ 290, subd. (b)); and (2) within five working days of his birthday (§ 290.011, subd. (c)). Relevant to this appeal, the prosecution did not charge Higgenbotham with failing to register every 30 days as a transient. (§ 290.011, subd. (a).) The prosecution also charged Higgenbotham with sustaining a prior serious and violent felony. (§§ 667, subds. (c), (e)(1), 1170.12, subd. (c)(1).)

3

## II.

### THE PROSECUTION'S CASE-IN-CHIEF AT TRIAL

In the prosecutor's case-in-chief at trial, two office specialists from the San Bernardino County Sheriff's Department testified. Their job duties included assisting sex offender registrants with registering at the Victorville station by completing one or both required forms, form 8047 and form 8102. Their combined testimony showed every sex registrant must complete the annual form 8047 within five working days of the registrant's birthday, and transient registrants must also fill out form 8102 monthly. Both forms begin with the registrant's biographical information, and the remaining pages contain numerous advisements explaining the sex offender registration requirements, terms, and conditions, including the requirement to register within five working days of their birthday and within five working days of coming to a new city or county within California. The registrant must acknowledge the advisements by placing their initials next to each one.

The office specialists testified that Higgenbotham did not have any registration violations since he began registering in 2007 until he fell out of compliance during the period at issue. They personally assisted Higgenbotham in registering on many occasions, including his most recent registration on February 23. One office specialist recalled going over all the terms and registration duties enumerated on the form with Higgenbotham. Higgenbotham initialed every advisement on the form. He signed the bottom of each page with an advisement indicating he understood its contents. He told the office specialist that he did not have any questions about the enumerated terms.

4

After registering on February 23, the office specialist provided Higgenbotham with a "receipt," which summarized that date's registration and, in highlight, indicated his next registration date was March 23 at 10:00 a.m. The court admitted into evidence copies of Higgenbotham's past initialed and signed registration forms and a surveillance video showing Higgenbotham registering on February 23. The video showed Higgenbotham placed the receipt in his backpack.

The prosecutor's final witness was the Desert Hot Springs Police Officer who arrested Higgenbotham. The officer testified that on July 5, he conducted a property check at an abandoned and condemned hotel in Desert Hot Springs. He encountered Higgenbotham sleeping in one of the rooms. Higgenbotham provided his name and birth date of April 18, 1986, and told the officer he had been in Desert Hot Springs for a day or so. The officer ran Higgenbotham's information in his system and, upon learning he was out of compliance with his sex offender registration, arrested him.

III.

HIGGENBOTHAM'S TESTIMONY AT TRIAL

Higgenbotham stipulated that he is required to register as a sex offender because he was convicted of a qualifying offense. He admitted to initialing and signing both form 8102 and form 8047 "faithfully" for years, totaling over 70 registrations. His testimony demonstrated a working knowledge of the registry requirements. He mentioned never staying five working days in one place because he "didn't want to go against what [his] requirements were and that [was] to register within five working days." He referenced his registration forms multiple times.

5

At one point, Higgenbotham articulated, "According to forms that I sign and police officers, once I find a residence where I can call home, I would only have to register once a year, sir." The prosecutor asked him when he has to register once a year, to which Higgenbotham replied, "On or before your birthday." The prosecutor asked Higgenbotham whether he knew he had to register within five days before or after his birthday. Higgenbotham replied, "That's on the form. Yes, sir." Higgenbotham testified the office specialists gave him a "receipt" each time he registered, which he kept in his wallet.

Higgenbotham admitted he did not register after February 23, 2022, but testified this was because he was traveling, never staying five working days in one jurisdiction. Higgenbotham provided a rough timeline accounting for his whereabouts from his last registration on February 23 through his arrest on July 5. He traveled by car from Victorville to Rialto. At first, he did not remember when he left Victorville, but then testified it was within five days of his February 23 registration. He estimated that he stayed in Rialto "one or two days," then went to his parents' house in Los Angeles for two days. From there, he went to Van Nuys for "about three days." In one day, he went to San Francisco, back to Los Angeles, then to Hesperia for the night.

He did not recall where he went after that, but later testified he drove straight from Hesperia to Mesa, Arizona to visit his fiancée's grave "who died in a crash about 10 years ago on her birthday." The prosecutor asked, "You said it was for her birthday?" Higgenbotham replied, "Yes, sir," and said her birthday was June 2. At first, Higgenbotham said he did not remember when he returned to California but later testified that he stayed at

6

the cemetery in Mesa "less than five hours," then drove to Yuma, Arizona to rest "a few hours." His vehicle was towed in Yuma, so he went by bus to Blythe early the following morning. He got a Lyft car ride from Blythe to Desert Hot Springs "maybe two hours or three hours later," again qualifying his testimony stating he did not remember. He testified that he arrived in Desert Hot Springs on July 4, 2022, and was arrested the next day. He testified no one advised him he still needed to register annually for his birthday even if traveling and not staying in one location for five working days.

A jury convicted Higgenbotham on both counts, and the trial court sentenced him to two years state prison on each count, with count 2 stayed pursuant to section 654.

## DISCUSSION

## I.

### SUFFICIENCY OF THE EVIDENCE

Higgenbotham contends there was insufficient evidence for a reasonable trier of fact to find him guilty beyond a reasonable doubt of count 1: failing to register within five working days of residing in Desert Hot Springs. We agree.

For sufficiency of the evidence claims, we review the entire record in the light most favorable to the judgment to determine whether it contains "evidence that is reasonable, credible, and of solid value . . . from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Lindberg* (2008) 45 Cal.4th 1, 27 (*Lindberg*).) "Our sole function is to determine if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*People v. Balkin*

7

(2006) 145 Cal.App.4th 487, 491–492 (*Balkin*).) "The standard of review is the same in cases where the prosecution relies primarily on circumstantial evidence." (*Ibid*.)

We find *Balkin* analogous and instructive. In that case, the defendant was a sex offender registrant released from prison and required to register within five working days of his release. (*Balkin, supra,* 145 Cal.App.4th at p. 490.) He was arrested on April 21, 2005, in Los Angeles. (*Ibid*.) He told the arresting officer his mailing address was in Los Angeles. (*Ibid*.) The prosecutor charged the defendant with failure to register within five days *of entering Los Angeles*, rather than failure to register within five days of his release from custody. (*Id*. at p. 492.) At trial, staff at two different men's correctional institutes where the defendant previously resided testified that their practice was to go over the sex offender registry details with each inmate subject to registration upon their release. (*Id*. at pp. 489-490.) The evidence showed the defendant previously registered at least three times. (*Id*. at p. 490.) There was evidence defendant was informed of his duty to register at least nine times. (*Ibid*.)

A jury convicted the defendant of failure to register within five days of entering Los Angeles. (*Balkin, supra,* 145 Cal.App.4th at p. 493.) The appellate court reversed, concluding there was insufficient evidence to support the judgment. (*Id*. at pp. 493-494.) His presence on the date of arrest and a mailing address was wholly insufficient to establish his presence in Los Angeles for five working days. The court noted the outcome may have differed if the prosecutor moved to amend or sought a jury determination on the more-appropriate theory that the defendant failed to register within five days of his release from incarceration. (*Id*. at p. 493.)

8

Like in *Balkin*, the prosecutor here did not present sufficient evidence to support the crime charged. The prosecutor likely had sufficient evidence to support a charge for failing to register as a transient every 30 days, rather than failing to register within five working days of entering Desert Hot Springs. The only evidence proving Higgenbotham's location that was "reasonable, credible, and of solid value" was his arrest in Desert Hot Springs on July 5, 2022. (*Lindberg*, *supra*, 45 Cal.4th at p. 27.) Even considered in light most favorable to the judgment, no rational trier of fact could have relied on Higgenbotham's self-professed timeline to place him in Desert Hot Springs on any specific date. While testifying, Higgenbotham repeatedly stated he could not remember either the duration of his stay or the next stop along his route but, when pressed, would add his best estimation. His timeline had at least two months unaccounted for.

The jury rejected Higgenbotham's assertion that he arrived in Desert Hot Springs on July 4 but relied on his testimony that he was in Mesa, Arizona on June 2 and came to Desert Hot Springs within a few days. The jury deemed the timeline unreliable yet relied on it. It speculated substantially and assumed Higgenbotham was residing in Desert Hot Springs for five working days, absent credible supporting evidence. Had there been any evidence of his presence in Desert Hot Springs before July 5, such as a surveillance video, a receipt, a bus ticket, or a witness statement from one of the other hotel occupants, this court's analysis may have differed. We reverse the judgment on count 1 with directions to dismiss count 1 in the information.

## II.

### INSTRUCTIONAL ERRORS

Higgenbotham argues the trial court committed instructional error when it denied his proposed pinpoint instruction and declined to instruct the jury on mistake of law. We find no error.

### A. *Standard of Review*

We review claims of instructional error de novo. (*People v. Manriquez* (2005) 37 Cal.4th 547, 581.) "The pertinent inquiry is whether the instructions as a whole fully and fairly set forth the applicable law . . . we assume that jurors are intelligent persons capable of understanding and correlating all jury instructions which are given and, where reasonably possible, we interpret the instructions to support the judgment. [Citation.]." (*People v. Jo* (2017) 15 Cal.App.5th 1128, 1152 (*Jo*).)

### B. *The Pinpoint Instruction*

The trial court and both parties crafted the language for both substantive jury instructions on counts 1 and 2. Both instructions required the prosecutor to prove beyond a reasonable doubt that "[t]he defendant actually knew he had a duty under . . . section 290 to register as a sex offender" and "[t]he defendant willfully failed to register as a sex offender . . . ."

Higgenbotham proposed to supplement the "actual knowledge" and "willfulness" requirements with a pinpoint instruction reading: "A violation of [s]ection 290 requires actual knowledge of the duty to register. A jury may infer knowledge from notice but notice alone does not necessarily satisfy the willfulness requirement." Because the first sentence repeated the "actual knowledge" element already in both jury instructions, Higgenbotham

proposed omitting the first sentence, so the pinpoint would only read: "A jury may infer knowledge from notice but notice alone does not necessarily satisfy the willfulness requirement."

A defendant has a right to an instruction pinpointing the theory of defense where the instruction is supported by substantial evidence, is a correct statement of the law and does not simply highlight specific evidence the defendant wishes the jury to consider. (*Jo, supra,* 15 Cal.App.5th at p. 1174.) "The trial court may properly refuse an instruction highlighting a defense theory if it is 'duplicative or potentially confusing.' [Citation.] '[W]here standard instructions fully and adequately advise the jury upon a particular issue, a pinpoint instruction on that point is properly refused.' [Citations.] Put another way, '[t]here is no error in a trial court's failing or refusing to instruct on one matter, unless the remaining instructions, considered as a whole, fail to cover the material issues raised at trial.'" (*Ibid.*)

Here, the trial court properly denied the proposed pinpoint instruction because the first sentence was duplicative, and the second sentence was not supported by substantial evidence. The pinpoint's first sentence, "A violation of [s]ection 290 requires actual knowledge of the duty to register," is nearly the exact language in element three of both counts' substantive jury instructions, "The defendant actually knew he had a duty under . . . section 290 to register as a sex offender . . . ." This duplicative language is unnecessary.

The second sentence, "A jury may infer knowledge from notice but notice alone does not necessarily satisfy the willfulness requirement," was similarly sufficiently covered by other jury instructions provided, specifically CALCRIM Nos. 225 and 220. CALCRIM No. 225, states in

11

relevant part, "A mental state may be proved by circumstantial evidence. ¶ . . . ¶ . . . [B]efore you may rely on circumstantial evidence to conclude that the defendant had the required mental state, you must be convinced that the only reasonable conclusion supported by the circumstantial evidence is that the defendant had the required mental state." (CALCRIM No. 225.) Applying this principle of law to the facts, notice may be circumstantial evidence used to prove Higgenbotham had the requisite mental state, which was actual knowledge of his duty to register.

Construed together with the reasonable doubt jury instruction, the trial court's instructions aptly cover the pinpoint instruction.[2] (CALCRIM No. 220.) Notice, without more evidence, may not sufficiently prove actual knowledge beyond a reasonable doubt. Because "we assume that jurors are intelligent persons capable of understanding and correlating all jury instructions" (*Jo*, *supra*, 15 Cal.App.5th at p. 1152), we find the court's provided jury instructions aptly covered the proposed pinpoint instruction, rendering it duplicative and unnecessary.

---

[2] The court instructed, "Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt . . . . In deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider all the evidence that was received throughout the entire trial.  Unless the evidence proves the defendant guilty beyond a reasonable doubt, he's entitled to that privilege, and you must find him not guilty." (See CALCRIM No. 220.)

12

*C. Mistake of Law Instruction*

Higgenbotham's defense at trial was that he misunderstood the law requiring he register as a sex offender even while traveling. He contends the trial court erred in denying his request for the mistake of law jury instruction. The mistake of law jury instruction reads in relevant part, "The defendant is not guilty of [failing to register as sex offender] if [he] made an honest or good faith mistake about the law, if that mistake shows that [he] did not have the specific [intent or mental state] required for the crime[s] of [failing to register as a sex offender]." (CALCRIM No. 3411.) We find no error.

A defendant is only entitled to a mistake of law instruction "if the evidence supports a reasonable inference that any such claimed belief was held in good faith." (*People v. Vineberg* (1981) 125 Cal.App.3d 127, 137.) "The instruction is properly refused if circumstances "'indicate that although defendant may have 'believed' he acted lawfully, he was aware of contrary facts which rendered such a belief wholly unreasonable, and hence in bad faith . . . .'" (*People v. Koenig* (2020) 58 Cal.App.5th 771, 808.)

Here, the evidence did not support a reasonable inference that Higgenbotham had a good faith belief he did not have to register while traveling. Although he maintains he misunderstood the law, Higgenbotham never actually testified to this direct point. The closest to this contention he came to was when he testified that no one advised him he still needed to register annually for his birthday even if he was not staying in one location for five working days.

The evidence to the contrary was significant. Higgenbotham registered consistently for 15 years, over 70 times, without a violation. He initialed and signed hundreds of advisements instructing and reminding him

of his various registration requirements. He never testified he did not read or understand the advisements. He acknowledged his initials and signatures in the most recent registration forms he completed. The office specialists testified they personally went over the form with Higgenbotham, and he did not have any questions about its contents. Higgenbotham may have contended he did not understand the registration requirements for traveling, but the circumstances surrounding his failure to register indicate such contention was not in good faith. A mistake of law instruction was not warranted. The trial court did not err.

## III.

### THE MINUTE ORDER AND ABSTRACT OF JUDGMENT

In the reporter's transcript from Higgenbotham's April 27, 2023 sentencing hearing, the trial court ordered the two-year prison sentence on count 2 stayed under section 654. The minute order and abstract of judgment indicate the two-year prison sentence on count 2 was to run concurrent with count 1. When there is a discrepancy between the oral pronouncement of a sentence and the minute order or the abstract of judgment, the oral pronouncement controls. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.) Because we reverse the judgement and order count 1 dismissed, however, the sentence on count 2 can no longer be properly stayed under section 654. Accordingly, we remand for the court to impose the two-year prison sentence on count 2.

14

## DISPOSITION

We reverse the judgment on count 1 with directions to dismiss count 1 in the information. We affirm the judgment on count 2 and remand to the trial court to impose the two-year prison sentence on count 2. The trial court is directed to prepare an amended abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation.


SANCHEZ, J.

WE CONCUR:


O'LEARY, P. J.


GOETHALS, J.